UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CRYSTAL LINDA PETERSEN,

                                      Plaintiff,         Case # 18-CV-6143-FPG

v.                                                       DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

**INTRODUCTION**

Plaintiff Crystal Linda Petersen brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 8, 10. For the reasons that follow, the Commissioner's motion is DENIED, Petersen's motion is GRANTED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

**BACKGROUND**

In March 2015, Petersen protectively applied for DIB with the Social Security Administration ("the SSA"). Tr.[1] 19. She alleged disability since May 28, 2014 due to chronic obstructive pulmonary disease, overactive bladder, depression, and arthritis in the neck and left shoulder. Tr. 47. On January 5, 2017, Petersen and a vocational expert ("VE") testified at a video hearing before Administrative Law Judge Michael Carr ("the ALJ"). Tr. 19, 43. On April 27,

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 8.

1

2017, the ALJ issued a decision finding that Petersen was not disabled. Tr. 19-32. On January 29, 2018, the Appeals Council denied Petersen's request for review. Tr. 1-4. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of

impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See Id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Petersen's claim for benefits under the process described above. At step one, the ALJ found that Petersen had not engaged in substantial gainful activity since the alleged onset date. Tr. 22. At step two, the ALJ found that Petersen has the following severe impairments: degenerative disc disease in her cervical spine and obesity. Tr. 22. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 25-26.

Next, the ALJ determined that Petersen retains the RFC to perform light work[2] with additional limitations. Tr. 26. Specifically, the ALJ found that Petersen can frequently push, pull, and reach overhead with her arms and cannot climb ladders, ropes, or scaffolds. Tr. 26.

At step four, the ALJ found that Petersen cannot perform her past relevant work. Tr. 30. At step five, the ALJ relied on the VE's testimony and found that Petersen can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 31-32. Specifically, the VE testified that Petersen can work as an electrode cleaner, garment sorter, and linen grader. Tr. 31. Accordingly, the ALJ concluded that Petersen was not disabled. Tr. 32.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

4

## II. Analysis

Petersen challenges the ALJ's decision on several grounds. Because it is dispositive, the Court need only address one: the ALJ's alleged failure to develop the record. Specifically, Petersen claims that the ALJ erred when he did not obtain treatment notes from her pain management specialist, Ashraf Sabahat, MD.[3] ECF No. 8-1 at 23-24. The Court agrees.

### a. Facts

Petersen has a long history of neck pain. While she experienced only intermittent discomfort after her 2004 neck surgery, in late 2011, her symptoms and pain began to increase. Tr. 295, 304. She was treated by Joseph W. Hinterberger, M.D., her primary care physician. Tr. 295. In addition, she received chronic pain management evaluation and treatment from Dr. Sabahat. Tr. 298, 299, 302.

Because Dr. Sabahat's notes are not in the record, it is difficult to piece together the course and extent of his treatment of Petersen. From what the Court can gather, Petersen received chronic pain management care from Dr. Sabahat, including medication and epidural injections. Tr. 213, 298, 299, 302, 304. Treatment has apparently been ongoing since 2011. *See* Tr. 42, 79, 80, 81, 213, 226, 298, 299, 302, 304.

The Social Security Administration requested records from Dr. Sabahat in August and September 2015, to no avail. Tr. 98, 99. At the January 5, 2017 hearing, Petersen notified the ALJ that the treatment records from Dr. Sabahat were still outstanding. Tr. 79-81. The ALJ confirmed that there had been "multiple request for records from [Dr.] Sabahat," and Petersen's representative volunteered to obtain those records. Tr. 81. The ALJ left the record open for three

---

[3] Petersen also argues that the ALJ failed to obtain additional records from her other treating physician. Given the Court's conclusion, it need not reach this argument.

5

weeks and said he would be willing to assist the representative if the records could not be obtained. Tr. 49-50, 94.

On January 25, 2017, Petersen's representative requested a two-week extension to obtain the requested records. Tr. 294. He stated that Schuyler Hospital—where Dr. Sabahat worked—was still processing the request. Tr. 294. The ALJ granted the extension request. Tr. 19. Thereafter, Petersen submitted a few records from Dr. Hinterberger, but no records from Schuyler Hospital or Dr. Sabahat. Petersen did not further correspond with the ALJ, and the ALJ rendered his decision on April 27, 2017. There is no evidence in the record to suggest that the ALJ either reached out to Schuyler Hospital himself or followed up with Petersen's representative to determine the status of the records request.

b. **Discussion**

Because Social Security proceedings are inquisitorial rather than adversarial, *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000), "the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moron v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks and citation omitted). As part of this duty, the ALJ must "investigate the facts and develop the arguments both for and against granting benefits." *Sims*, 530 U.S. at 111. Therefore, under the applicable regulations, before making a disability determination, the ALJ must develop a claimant's complete medical history. *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (internal citation omitted). Importantly, the ALJ bears this affirmative duty "even when the claimant is represented by counsel." *Sotososa v. Colvin*, No. 15-CV-854, 2016 WL 6517788, at *4 (W.D.N.Y. Nov. 3, 2016). Consequently, this Court has held that, where there is a gap in the record, an ALJ cannot satisfy his duty to develop the record merely by requesting that claimant's counsel obtain

6

the missing evidence. *See id.* (collecting cases). The ALJ must make some additional effort beyond that request, like following up with counsel or obtaining the missing records himself. *See id.*

Here, the ALJ failed to develop the record. There was an obvious, identified gap in the record: Dr. Sabahat's entire treatment history. The opinions and findings of a treating physician are "especially important part[s] of the record to be developed by the ALJ." *Gonzalez-Cruz v. Comm'r of Social Sec.*, No. 17-CV-6406, 2018 WL 4658725, at *3 (W.D.N.Y. Sept. 28, 2018); *see also* 42 U.S.C. § 423(d)(5)(B). Dr. Sabahat's records were particularly relevant in this case because one of the primary issues was the extent of the limitations caused by Petersen's neck pain. Furthermore, the ALJ relied in part on the absence of evidence to conclude that Petersen's neck pain did not cause extreme limitations. For example, he noted that Petersen had not sought treatment for her neck in 2016 or 2017. Tr. 27. To the contrary, there is evidence that she met with Dr. Sabahat as late as November 2016.[4] Tr. 42. Similarly, the ALJ discounted Dr. Hinterberger's opinion in part because he could not discern what had changed in Petersen's condition from 2011 to 2016 that would account for the extreme limitations that Dr. Hinterberger had found. Tr. 29-30. Given that Dr. Sabahat treated Petersen's neck and back pain over that timeframe, his treatment records would fill that exact evidentiary gap. *See Mauzy v. Colvin*, No. 5:12-cv-866, 2014 WL 582246, at *5 (N.D.N.Y. Feb. 13, 2014) ("[A]dministrative law judges . . . may not automatically rely on [the] absence of probative evidence 'without making an affirmative effort to fill any gaps in the record.'") (internal citation omitted).

The only remaining question is whether the ALJ fulfilled his duty to develop the record by asking Petersen's representative to obtain the records. He did not. After the hearing, the ALJ left

---

[4] This evidence was seemingly not in the record before the ALJ. *See* Tr. 33-36, 42.

7

the record open and later provided an extension of time to the representative. But the ALJ never took any independent steps to develop the record. He did not attempt to obtain the records himself or even follow up with the representative to determine the status of the request or warn him that a decision would be made without the records. *See, e.g.*, *Jordan v. Comm'r of Social Sec.*, 142 F. App'x 542, 543 (2d Cir. 2005) (summary order) (ALJ fulfilled duty to develop record where, after counsel volunteered but failed to obtain records, ALJ contacted counsel "to remind him that no evidence had been received and that a decision would be made on the existing record unless such evidence was timely submitted"); *Sotososa*, 2016 WL 6517788, at *4. More is required from the ALJ.

Because the ALJ did not fulfill his duty to develop the record, remand to the Commissioner is appropriate. *See Cooper v. Comm'r of Social Sec.*, No. 18-CV-139, 2019 WL 1894205, at *6 (W.D.N.Y. Apr. 29, 2019).

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 10) is DENIED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is GRANTED. This matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: May 9, 2019
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court